# EXHIBIT 2

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2    Including Professional Corporations
   TRAVIS J. ANDERSON, Cal. Bar No. 265540
3  JOSEPH C. PEACOCK, Cal. Bar No. 317317
   12275 El Camino Real, Suite 200
4  San Diego, California 92130-4092
   Telephone:    858.720.8900
5  Facsimile:    858.509.3691
   Email         tanderson@sheppardmullin.com
6                jpeacock@sheppardmullin.com

7  Attorneys for Hyundai Motor America and
   Brian Latouf
8

9
            SUPERIOR COURT OF THE STATE OF CALIFORNIA
10
            COUNTY OF ORANGE, CENTRAL JUSTICE CENTER
11
                                              Judge Linda Marks
12
   HYUNDAI MOTOR AMERICA, a            Case No.  30-2019-01115758-CU-BT-CJC
13 California corporation, BRIAN LATOUF,
   an individual,                      **COMPLAINT FOR:**
14
            Plaintiff,                   1. **DECLARATORY RELIEF NO. 1**
15
       v.                               2. **DECLARATORY RELIEF NO. 2**
16
   GENERAL MOTORS COMPANY, a            3. **DECLARATORY RELIEF NO. 3**
17 Delaware corporation; DOES 1-30,
                                        4. **UNFAIR COMPETITION**
18          Defendant.                     **(Cal. Bus. & Prof. Code § 17200)**

19

20

21

22

23

24

25

26

27

28

SMRH:4850-8155-9470.6                    COMPLAINT FOR DECLARATORY RELIEF

Plaintiffs HYUNDAI MOTOR AMERICA ("Hyundai") and BRIAN LATOUF ("Latouf") ("collectively "Plaintiffs") bring this complaint against Defendant GENERAL MOTORS COMPANY ("GM") and Does 1-30 (collectively "Defendants"), and allege as follows:

## INTRODUCTION

1.      Latouf is a former employee of GM who accepted a position with Hyundai. Hyundai is a wholly owned subsidiary of the international automotive manufacturer Hyundai Motor Company, and the U.S. distributor of its vehicles.  Hyundai is headquartered in Fountain Valley, California.  GM is an automotive manufacturer headquartered in Detroit, Michigan.

2.      Latouf previously worked as GM's Executive Director Global Safety Field Investigations & Regulations.  Latouf worked for GM for 26 years, before retiring on November 30, 2019, in compliance with GM's policies.  During the course of his employment, GM presented Latouf in take-it-or-leave-it terms stock agreements containing restrictive covenants, including a non-compete provision, an employee solicitation provision, and a third-party solicitation provision, each of which would last for twelve months following the termination of his GM employment.  The restrictive covenants are vast in scope, banning Latouf from, *inter alia*, working in any capacity for any vehicle manufacturing company that in any way competes with GM.  Though GM provided stock options to Latouf in exchange for these restrictive covenants, the stock options are subject to complete forfeiture in the event Latouf violates any of the restrictive covenants.  Latouf, who was not represented by counsel at the time of signing, entered into these agreements, the most recent being a 2019 Award Document.

3.      Latouf recently accepted a position with Hyundai in California as its Chief Safety Officer.  Latouf's new role at Hyundai will not in any way require the use of any confidential information or trade secrets belonging to GM.  Hyundai has also repeatedly

COMPLAINT FOR DECLARATORY RELIEF

1 instructed Latouf to avoid in any way using any trade secrets belonging to GM, and made
2 this an express condition of Latouf's employment with Hyundai.

3     4.     In violation of California law, GM has threatened to enforce the anti-
4 competition covenants against Latouf and Hyundai in order to prevent Latouf from
5 working for Hyundai in California. GM has specifically demanded that Latouf resign from
6 Hyundai. The restrictive covenants GM relies on constitute unlawful restraints on Latouf's
7 ability to work in his chosen profession in California, in violation of California Business &
8 Professions Code section 16600 ("Section 16600"), and unlawful interference on
9 Hyundai's ability to hire employees for its California headquarters and operations.

10     5.     California prohibits GM's anti-competitive covenants in the strongest
11 possible terms. It is California's fundamental public policy that its workers shall retain the
12 right to pursue any lawful employment and enterprise of their choice, and that its
13 employers will also have an unfettered right to hire employees, so long as no trade secrets
14 are misused or disclosed. California law declares that any contract that attempts to
15 prohibit someone from engaging in a lawful profession or business of any kind is void and
16 unenforceable. Thus, the restrictive covenants GM now seeks to enforce against Latouf
17 and Hyundai are illegal and void under California law.

18     6.     As a result of GM's threats, Latouf and Hyundai have been forced to bring
19 this action to prevent GM from seeking to enforce the unlawful restrictive covenants.

20 **THE PARTIES**

21     7.     Plaintiff Hyundai is, and was at all relevant times, a California corporation
22 with its principal place of business in the County of Orange, California.

23     8.     Plaintiff Latouf is an individual currently residing in Michigan. Latouf's
24 new position with Hyundai will require him to spend the vast majority of his work time at
25 Hyundai's headquarters in the County of Orange, California. As a result, Latouf plans to
26 move to California as soon as possible, and will be a California resident for the vast
27 majority of the next 12 months.

28

9. Defendant GM is, and was at all relevant times, a Delaware corporation with its principal place of business in Detroit, Michigan.

10. The true names and capacities, whether individual, corporate, associate, partnership or otherwise, of defendants Does 1 through 30, inclusive, and each of them, are unknown to Plaintiffs who therefore sue said defendants by such fictitious names. Plaintiffs will amend this complaint to allege the true names and capacities of such defendants when ascertained.

11. At all relevant times, defendants, and each of them, were the agents, employees, fiduciaries, representatives, partners or co-venturers of the other defendants, and each of them, and in doing the things herein alleged, were acting for the purpose and within the course, scope and authority of such agency, employment, fiduciary, partnership and co-venturer relationship.

12. At all relevant times, defendants, and each of them, were completely dominated and controlled by the other defendants, and each of them, such that defendants have no independent identity or existence of their own and their acts were the acts of the other defendants, and each of them, such that adherence to the purported separate identities of each or any of them would result in a fraud and injustice to Plaintiffs.

## VENUE AND JURISDICTION

13. This Court has jurisdiction to hear the subject matter of this Complaint pursuant to the California Constitution, Article VI, section 10, and California Code of Civil Procedure section 410.10. The Court also has jurisdiction pursuant to California Code of Civil Procedure section 1060, by virtue of the fact that this is a civil action for declaratory relief, and because jurisdiction over this case is not given by statute to other trial courts.

14. Venue is proper in this judicial district pursuant to California Code of Civil Procedure sections 395(a) and 395.5. Defendants transact business in the County of Orange and are within the jurisdiction of this Court for purposes of service of process. The unlawful acts alleged herein had a direct effect on and were committed within the County of Orange, State of California.

# FACTUAL BACKGROUND

15.     Until recently, Latouf worked at GM as its Executive Director Global Safety Field Investigations & Regulations.  Though Latouf worked for GM for 26 years, it was not until 2017 that GM began presenting Latouf, on take-it-or-leave-it terms, stock award agreements containing restrictive covenants, including most recently a 2019 Award Document under GM's 2017 Long-Term Incentive Plan ("2019 Award Document"). Latouf, who was not represented by counsel at the time he entered into the 2019 Award Document, understood that the grant of options was conditioned upon the restrictive covenants, and that the only penalty for violating those covenants would be the forfeiture of the underlying stock options.  Latouf did not understand that, in the event of a breach, GM would not only demand a forfeiture of stock options – the entire consideration underlying the agreements – but also seek to prevent Latouf from working for a 12-month period.  On information and belief, the 2019 Award Document superseded any and all prior restrictive covenants between GM and Latouf.

16.     Under the 2019 Award Document, GM provided Latouf stock options in GM, portions of which would vest on Latouf's subsequent employment anniversaries with GM.  The 2019 Award Document contained, among other provisions, three restrictive covenants that purport to prohibit Latouf from: (1) working for any motor vehicle manufacturer for 12 months following his employment with GM; (2) soliciting GM employees to work with his new company for 12 months following his employment with GM; and (3) soliciting any business from any GM customer, client, supplier, or provider of GM that he in any way provided services for while at GM, for 12 months following his employment with GM.  A true and correct copy of the 2019 Award Document is attached hereto as **Exhibit 1**.

A.     **GM's Restrictive Covenants**

17.     The "Restrictive Covenants" section of the 2019 Award Document provides:

In exchange for the Options described in this Award Document, except to the extent this provision is expressly unenforceable or unlawful under applicable law, you agree to the following restrictive covenants ("**Restrictive Covenants**") that apply during your employment with the Company and its Subsidiaries, and for the 12-month period commencing on your Termination of Service, including a Full Career Status Termination:

- You will not directly or indirectly engage in or perform any engineering, purchasing, design, marketing, manufacturing or any other tasks or functions or provide services in any other capacity (e.g., as an employee, a board member, a manager or a consultant) for any motor vehicle manufacturer (including its parents, subsidiaries, and other affiliates) that competes with the Company or its Subsidiaries;

- You will not directly or indirectly, knowingly induce any employee of the Company or any Subsidiary to leave their employment for participation, directly or indirectly, with any existing or future employer or business venture associated with you; and

- You will not directly or indirectly solicit any client, customer, or supplier of, or provider to the Company or its Subsidiaries who was a client, customer, supplier or provider for which you provided services or supervised services during the 12-month period immediately prior to your Termination of Service.

You may seek permission from the Company to take action that would otherwise violate one or more aspects of these Restrictive Covenants, including a request to work in a direct or indirect capacity for any motor vehicle manufacturer that compete with the Company, but the Company may deny such request in its unfettered discretion and otherwise enforce the provisions of the Restrictive Covenants.

If you violate any of the Restrictive Covenants during its effective period without the Company's consent, both the unvested and vested but unexercised portion of your Award will immediately be cancelled. In addition, you agree to repay to the Company all of the gains resulting from any exercise of the Options during the period commencing on the date that is 12 months prior to your Termination of Service and ending on the date that is 12 months following your Termination of Service. To the extent permitted under applicable law, the Company may also take action at equity or in law to enforce the provision of the applicable Restrictive Covenants. Following application of this provision of the Award Document, you will continue to be bound by the obligations, promises and other agreements contained in the Plan and the Award Document.

18.     These three restrictive covenants set out in the 2019 Award Document are void and unenforceable under California law, as further alleged below.

**B.**     **Latouf Accepted Hyundai's Employment Offer as Chief Safety Officer**

19.     On or about November 18, 2019, Latouf accepted a job offer from Hyundai for the position of Chief Safety Officer for Hyundai.  Under the terms of Latouf's employment agreement with Hyundai, Latouf will work from Hyundai's headquarters in Fountain Valley, California, and expects to earn an annual salary and bonuses far in excess of the GM stock option awards Latouf stood to receive under the 2019 Award Document.

20.     As an express condition of Latouf's employment at Hyundai, Latouf cannot use or disclose any trade secret information belonging to any former employers, including GM.  Latouf's new position at Hyundai will correspondingly not require him to use or disclose any trade secret information he learned or had access to while at GM.

**C.**     **GM Threatens Latouf with the Restrictive Covenants in an Attempt to Pressure Latouf to Resign from Hyundai**

21.     On November 26, 2019, GM sent a letter to counsel for Latouf.  GM stated it was aware that Latouf had accepted a position with Hyundai, and would begin working for Hyundai on December 2, 2019.  GM cited the restrictive covenants from the 2019 Award Document, and demanded Latouf comply with those covenants by immediately resigning from Hyundai.  GM's letter otherwise reserved all rights, including "the cancellation of Mr. Latouf's outstanding GM compensation (including his incentive compensation under the Short Term Incentive Plan and Long Term Incentive Plan)."  GM further stated it was "inevitable" that Latouf would use GM's trade secret information while working in his new position for Hyundai.  A true and correct copy of GM's letter to Mr. Latouf's attorney is attached hereto as **Exhibit 2**.  That same day, GM sent a separate letter directly to Hyundai's Chief Legal Officer in Fountain Valley, California which reiterated the points raised in GM's letter to Latouf's attorney.  GM's letter to Hyundai stated Mr. Latouf's "obligations to GM remain in effect and prohibit him from working for Hyundai as its Chief Safety officer."  GM closed the substance of its letter to Hyundai by stating, "GM is prepared to pursue legal action against Mr. Latouf and Hyundai to enforce these

1 obligations and will seek all available remedies for any harm caused." A true and correct
2 copy of GM's letter to Hyundai is attached hereto as **Exhibit 3**.

3      22.    From the date of the letter through the present, both Latouf and Hyundai

4 have provided multiple assurances to GM that Latouf would in no way use or disclose any

5 trade secret information learned or accessed in the course and scope of his prior

6 employment with GM. As Hyundai's Chief Safety Officer, Latouf has no use for GM's

7 trade secret information, as his duties are focused on Hyundai's individualized safety

8 needs and processes, and working with government regulatory agencies to ensure all safety

9 standards are complied with and effectively implemented, including vehicle recalls.

10 Latouf and Hyundai further offered to agree in writing with GM that GM's sensitive and

11 trade secret information will in no way be used by Latouf or Hyundai. Notwithstanding

12 these assurances and offers to ensure GM's trade secrets will not be disclosed or used, GM

13 continues to insist Latouf resign from Hyundai on the grounds that he is violating the

14 restrictive covenants contained in the 2019 Award Document. GM's threats have left

15 Hyundai and Latouf no choice but to initiate this lawsuit to protect themselves from GM's

16 unlawful restrictive covenants.

17 **FIRST CAUSE OF ACTION**

18 **Declaratory Relief Invalidating GM's Non-Compete Provision**

19 **(By Plaintiffs Against Defendants)**

20      23.    Plaintiffs incorporate by reference all preceding allegations of this complaint.

21      24.    An actual and present controversy has arisen between Plaintiffs on the one

22 hand, and Defendants, on the other, regarding their respective rights and obligations, if

23 any, under the 2019 Award Document's non-compete provision (the "non-compete

24 provision"). The non-compete provision states:

25     In exchange for the Options described in this Award Document, except to the
    extent this provision is expressly unenforceable or unlawful under applicable
26     law, you agree to the following restrictive covenants ("**Restrictive**
    **Covenants**") that apply during your employment with the Company and its
27     Subsidiaries, and for the 12-month period commencing on your Termination
    of Service, including a Full Career Status Termination:
28

-8-

- You will not directly or indirectly engage in or perform any engineering, purchasing, design, marketing, manufacturing or any other tasks or functions or provide services in any other capacity (e.g., as an employee, a board member, a manager or a consultant) for any motor vehicle manufacturer (including its parents, subsidiaries, and other affiliates) that competes with the Company or its Subsidiaries; . . .

25.    Plaintiffs contend the non-compete provision is void and unenforceable under California law.  By contrast, Defendants contend that the non-compete provision is valid and enforceable, and have threatened to enforce the provision to prevent Latouf from working at Hyundai in California.

26.    Section 16600 of the California Business and Professions Code states that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

27.    The non-compete provision denies Latouf the right to pursue his choice of lawful employment, in contravention of California law and public policy.  The non-compete provision is otherwise unreasonable, overbroad, and not reasonably necessary to protect GM's trade secrets.  It is unlawful and unenforceable in its entirety.

28.    A judicial declaration is thus necessary and appropriate so that the parties may ascertain their respective rights, duties, and obligations under the non-compete provision.

29.    Plaintiffs request that the Court issue a judicial declaration that the non-compete provision is void and unenforceable.

## SECOND CAUSE OF ACTION

### Declaratory Relief Invalidating GM's Employee Non-Solicitation Provision

### (By Plaintiffs Against Defendants)

30.    Plaintiffs incorporate by reference all preceding allegations of this complaint.

31.    An actual and present controversy has arisen between Plaintiffs on the one hand, and Defendants, on the other, regarding their respective rights and obligations, if any, under the employee non-solicitation provision in the 2019 Award Document (the

COMPLAINT FOR DECLARATORY RELIEF

"employee non-solicitation provision"). The employee non-solicitation provision provides:

> In exchange for the Options described in this Award Document, except to the extent this provision is expressly unenforceable or unlawful under applicable law, you agree to the following restrictive covenants ("**Restrictive Covenants**") that apply during your employment with the Company and its Subsidiaries, and for the 12-month period commencing on your Termination of Service, including a Full Career Status Termination:
>
> . . .
>
> • You will not directly or indirectly, knowingly induce any employee of the Company or any Subsidiary to leave their employment for participation, directly or indirectly, with any existing or future employer or business venture associated with you; . . .

32. Plaintiffs contend the employee non-solicitation provision is void and unenforceable under California law. By contrast, Defendants contend that the employee non-solicitation provision is valid and enforceable, and have threatened to enforce the provision against Latouf.

33. Section 16600 of the California Business and Professions Code states that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

34. The employee non-solicitation provision contravenes California law and public policy in favor of competition and employee mobility and, as such, is unenforceable under Business and Professions Code section 16600. The employee non-solicitation provision is otherwise unreasonable, overbroad, and not reasonably necessary to protect GM's trade secrets. It is unlawful and unenforceable in its entirety.

35. A judicial declaration is thus necessary and appropriate so that the parties may ascertain their respective rights, duties, and obligations under the employee non-solicitation provision.

36. Plaintiffs request that the Court issue a judicial declaration that the employee non-solicitation provision is void and unenforceable.

# THIRD CAUSE OF ACTION

## Declaratory Relief Invalidating GM's Third-Party Non-Solicitation Provision

### (By Plaintiffs Against Defendants)

37. Plaintiffs incorporate by reference all preceding allegations of this complaint.

38. An actual and present controversy has arisen between Plaintiffs on the one hand, and Defendants, on the other, regarding their respective rights and obligations, if any, under the third-party non-solicitation provision in the 2019 Award Document (the "third-party non-solicitation provision"). The third-party non-solicitation provision provides:

> In exchange for the Options described in this Award Document, except to the extent this provision is expressly unenforceable or unlawful under applicable law, you agree to the following restrictive covenants ("**Restrictive Covenants**") that apply during your employment with the Company and its Subsidiaries, and for the 12-month period commencing on your Termination of Service, including a Full Career Status Termination:
>
> . . .
>
> - You will not directly or indirectly solicit any client, customer, or supplier of, or provider to the Company or its Subsidiaries who was a client, customer, supplier or provider for which you provided services or supervised services during the 12-month period immediately prior to your Termination of Service.

39. Plaintiffs contend the third-party non-solicitation provision within the 2019 Award Document is void and unenforceable under California law. By contrast, Defendants contend that the third-party non-solicitation provision is valid and enforceable.

40. Section 16600 of the California Business and Professions Code states that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

41. The third-party non-solicitation provision contravenes California law and public policy in favor of competition and employee mobility and, as such, is unenforceable under Business and Professions Code section 16600. The third-party non-solicitation provision is otherwise unreasonable, overbroad, and not reasonably necessary to protect GM's trade secrets. It is unlawful and unenforceable in its entirety.

-11-

42.     A judicial declaration is thus necessary and appropriate so that the parties may ascertain their respective rights, duties, and obligations under the third-party non-solicitation provision.

43.     Plaintiffs request that the Court issue a judicial declaration that the third-party non-solicitation provision is void and unenforceable.

## FOURTH CAUSE OF ACTION

### Unfair Competition, California Business & Professions Code § 17200

### (By Plaintiffs Against Defendants)

44.     Plaintiffs incorporate by reference all preceding allegations of this complaint.

45.     This Cause of Action is brought pursuant to California's Unfair Competition Law (the "UCL") at Business & Professions Code § 17200 *et seq*.  The UCL defines unfair competition as any unlawful, unfair, or fraudulent business act or practice and unfair deceptive, untrue or misleading advertising or any other improper act.  Such actions include requiring employees to sign agreements that violate California Business & Professions Code section 16600, attempting to enforce such agreements, and other actions that unlawfully interfere with the business relationships of former employees.  Defendants' conduct constitutes unfair, unlawful, and/or fraudulent business practices within the meaning of Business & Professions Code § 17200.

46.     Defendants seek to stifle free and fair competition from former employees such as Latouf by having them sign restrictive covenants unenforceable under California law, and then making threats and attempting to enforce these unlawful provisions.  Through these unlawful provisions, Defendants seek to foreclose lawful competition for automotive industry employees throughout California, and to specifically prevent Latouf from lawfully working in his professional field for Hyundai.

47.     Defendants have thus engaged in unlawful and/or unfair business acts and practices in violation of California Business and Professions Code sections 16600 and 17200 and under the common law, entitling Latouf and Hyundai to injunctive relief

-12-

COMPLAINT FOR DECLARATORY RELIEF

prohibiting Defendants from enforcing, or attempting to enforce, the illegal restrictive covenants contained in the 2019 Award Document.

## PRAYER FOR RELIEF

Plaintiffs pray for:

1. A judicial declaration that the non-compete provision is void and unenforceable;

2. A judicial declaration that the employee non-solicitation provision is void and unenforceable;

3. A judicial declaration that the third-party non-solicitation provision is void and unenforceable;

4. Preliminary and permanent injunctive relief barring Defendants from seeking to enforce the non-compete provision, the employee non-solicitation provision, and/or the third-party non-solicitation provision against Latouf or Hyundai;

5. Costs of suit incurred herein; and

6. For any further relief that the Court deems just and equitable.


Dated: December 3, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By _____
TRAVIS J. ANDERSON
JOSEPH C. PEACOCK

Attorneys for Hyundai Motor America and Brian Latouf

# EXHIBIT 1

# EXHIBIT 1

**General Motors Company**
**2017 Long-Term Incentive Plan**
**Award Document for February 2019 Grant**

**Private and Confidential**

Brian Latouf

This letter ("**Award Document**") describes the details under which you are being granted an Award of Non-Qualified Stock Options ("**Options**") under the General Motors Company 2017 Long-Term Incentive Plan (as amended from time to time, the "**Plan**").  As the Options vest, you have the right to purchase Shares at the exercise price noted below ("**Exercise Price**").

A copy of the Plan can be found on the Solium Shareworks site.  Capitalized terms used in this Award Document have the meanings given in the Plan unless noted otherwise.

The full terms of your Award are set out in this Award Document, the Plan and any policy adopted by the Committee in respect of the Plan and Awards thereunder that is applicable to this Award.  In the event of any conflict between this Award Document and the Plan, the terms of this Award Document shall prevail.

**Terms of this Award**

| | |
|---|---|
| **Issuer** | General Motors Company, a Delaware corporation |
| **Number of Options Granted To You** | 7,000 Options |
| **Exercise Price** | $39.00 USD |
| **Grant Date** | February 13, 2019 |
| **Vesting Schedule** | One-third of the Options will vest on the first, second and third anniversaries of the Grant Date as follows:<br><br>One-third on February 13, 2020<br>One-third on February 13, 2021<br>One-third on February 13, 2022 |

| | |
|---|---|
| | For purposes of calculating the pro rata portion of the Award as may be required under the terms of the Plan, the time period for such proration will be deemed to have commenced on the Grant Date.<br><br>Except as otherwise provided in the Plan and this Award Document, any portion of the Options not vested as of a Termination of Service shall be forfeited. |
| **Expiration Date** | February 13, 2029 upon the close of the New York Stock Exchange.<br><br>Any unexercised Options that remain following the Expiration Date shall be forfeited. |
| **Form of Settlement** | Unless otherwise prohibited by the Plan, this Award Document, law or administrative rules established under the Plan, your Options may be exercised and settled in the following ways:<br><br>Buy and Hold – Exercise Options to buy Shares using cash and then hold the Shares;<br><br>Cashless – Exercise Options to buy Shares and sell the acquired Shares at the same time without using cash.  Net proceeds received in cash;<br><br>Net Shares – Exercise Options to buy Shares and sell the acquired Shares at the same time without using cash.  Net proceeds received in Shares;<br><br>Stock for Stock – Exercise Options to buy Shares using the value of Shares already owned;<br><br>Combination or Other Methods (as may be approved by the Committee).<br><br>Notwithstanding the forgoing and the terms of the Plan, the Company reserves the right to limit the form of settlement based on your home or host location at the time of exercise.  For example, if you are providing services in certain specified jurisdictions at the time of exercise, you may only exercise vested Options through a cashless exercise.   The Company also reserves the right to further modify the form of settlement of your Award as it deems appropriate to account for the impact of local law and regulations.  For example, the Company may adjust settlement to account for unique limitations regarding the provision of equity outside the United States. |

| | Regardless of the form of settlement, as required by law, the Company will withhold any applicable federal, state, local or foreign tax in connection with any exercise of the Options.  You are responsible for any taxes due upon exercise of the Options. |
|---|---|
| **Conditions  Precedent** | Pursuant and subject to Section 11 of the Plan, as a condition precedent to the vesting and/or exercise of any portion of your Award, you shall:<br><br>• Refrain from engaging in any activity which will cause damage to the Company or is in any manner inimical or in any way contrary to the best interests of the Company, as determined pursuant to the Plan; and<br>• Furnish to the Company such information with respect to the satisfaction of the foregoing as the Committee may reasonably request.<br><br>In addition, the Committee may require you to enter into such agreements as the Committee considers appropriate.<br><br>Your failure to satisfy any of the foregoing conditions precedent will result in the immediate cancellation of the unvested portion of your Award and any vested portion of your Award that has not yet been exercised, and you will not be entitled to receive any consideration with respect to such cancellation. |

| | |
|---|---|
| **Restrictive Covenants** | In exchange for the Options described in this Award Document, except to the extent this provision is expressly unenforceable or unlawful under applicable law, you agree to the following restrictive covenants ("**Restrictive Covenants**") that apply during your employment with the Company and its Subsidiaries, and for the 12-month period commencing on your Termination of Service, including a Full Career Status Termination:<br><br>• You will not directly or indirectly engage in or perform any engineering, purchasing, design, marketing, manufacturing or any other tasks or functions or provide services in any other capacity (e.g., as an employee, a board member, a manager or a consultant) for any motor vehicle manufacturer (including its parent, subsidiaries, and other affiliates) that competes with the Company or its Subsidiaries;<br>• You will not directly or indirectly, knowingly induce any employee of the |

Company or any Subsidiary to leave their employment for participation, directly or indirectly, with any existing or future employer or business venture associated with you; and

- You will not directly or indirectly solicit any client, customer, or supplier of, or provider to the Company or its Subsidiaries who was a client, customer, supplier or provider for which you provided services or supervised services during the 12-month period immediately prior to your Termination of Service.

You may seek permission from the Company to take action that would otherwise violate one or more aspects of these Restrictive Covenants, including a request to work in a direct or indirect capacity for any motor vehicle manufacturer that competes with the Company, but the Company may deny such request in its unfettered discretion and otherwise enforce the provisions of the Restrictive Covenants.

If you violate any of the Restrictive Covenants during its effective period without the Company's consent, both the unvested and vested but unexercised portion of your Award will immediately be cancelled.  In addition, you agree to repay to the Company all of the gains resulting from any exercise of the Options during the period commencing on the date that is 12 months prior to your Termination of Service and ending on the date that is 12 months following your Termination of Service.  To the extent permitted under applicable law, the Company may also take action at equity or in law to enforce the provisions of the applicable Restrictive Covenants.  Following application of this provision of the Award Document, you will continue to be bound by the obligations, promises and other agreements contained in the Plan and the Award Document.

| | |
|---|---|
| **Other Terms and Conditions of the Award** | Refer to the Plan for additional terms and conditions applicable to your Award, including but not limited to those relating to:<br><br>- No dividends or dividend equivalents will be earned or paid on the Options granted;<br>- Effect of your Termination of Service on your Award, including upon Death, Disability, achievement of Full Career Status and other Termination of Service scenarios;<br>- Your Award being subject to any clawback or recoupment policies of the Company as may be in effect from time to time; |

| | - The impact of a Change in Control or other specified corporate event on your Award; and<br>- Jurisdiction and governing law. |
|---|---|

## Additional Acknowledgements

The following additional terms apply to your Award, your participation in the Plan and the grant of the Options (and issuance of any Shares) to you.  By accepting the Award you irrevocably agree and acknowledge in favor of the Company (on its own behalf and as an agent for the Subsidiaries) that:

a. To enable the Company to issue you this Award, and administer the Plan and any Award, you consent to the holding and processing of personal information provided by you to the Company or any Subsidiary, trustee or third party service provider, for all purposes relating to the operation of the Plan in accordance with Section 20 of the Plan.

b. You will not have any claim to be granted any Award under the Plan, and there is no obligation for uniformity of treatment of employees, consultants, advisors, Participants or holders or Beneficiaries of Awards under the Plan. The terms and conditions of Awards need not be the same with respect to each recipient. Any Award granted under the Plan shall be a single, voluntary grant and does not constitute a promise, a contractual right or other right to receive future grants. The Committee maintains the right to make available future grants under the Plan.

c. The grant of this Award does not give you the right to be retained in the employ of, or to continue to provide services to, the Company or any Subsidiary. The Company or the applicable Subsidiary may at any time dismiss you, free from any liability, or any claim under the Plan, unless otherwise expressly provided in the Plan or in any other agreement binding you and the Company or the applicable Subsidiary. Your receipt of this Award under the Plan is not intended to confer any rights on you except as set forth in this Award Document or in the Plan.

d. Unless otherwise required by law, this Award under, and your participation in, the Plan does not form part of your remuneration for the purposes of determining payments in lieu of notice of termination of your employment of office, severance payments, leave entitlements, or any other compensation payable to you and no Award, payment, or other right or benefit, under the Plan will be taken into account in determining any benefits under any pension, retirement, savings, profit-sharing, group insurance, welfare or benefit plan of the Company or any of the Subsidiaries.

e. This Award includes Restrictive Covenants and conditions precedent that apply during and following your termination of employment, and the Options described in this Award constitute good and valuable consideration provided in exchange for those Restrictive Covenants.

f. The Company and the Subsidiaries, their respective affiliates, officers and employees make no representation concerning the financial benefit or taxation consequences of any Award or participation in the Plan and you are strongly advised to seek your own professional legal and taxation advice concerning

the impact of the Plan and your Award.

g.  The future value of the Options and subsequent Shares as a result of exercise is unknown and cannot be predicted with certainty and may increase or decrease in value.

h.  You will have no claim or entitlement to compensation or damages arising from the forfeiture of the Options, the termination of the Plan, or the diminution in value of the Options or Shares, including, without limitation, as a result of the termination of your employment by the Company or any Subsidiary for any reason whatsoever and whether or not in breach of contract. You irrevocably release the Company, its Subsidiaries, Affiliates, the Plan Administrator and their affiliates from any such claim that may arise.

i.  The Company has adopted a stock ownership requirement policy and, if your position is covered, you shall be subject to and comply with this policy as may be in effect from time to time.  Options do not count towards your stock ownership requirement.

j.  If any term of this Award is determined to be unenforceable as written by a court of competent jurisdiction, you acknowledge and agree that such term shall be adjusted to the extent determined by the court to achieve the intent of the Company in imposing such term and if the court determines that such term cannot be reformed to achieve the intent of the Company, then the elimination of the pertinent provisions of that term shall not otherwise impact the enforceability of the other terms of this Award.

k.  This Plan and this Award are governed by the laws of the State of Delaware, without regard to the conflicts of law provisions thereof, and any cause or claim arising with respect to this Award or the subject matter contained in this Award Document will be exclusively resolved in the Courts of Delaware. The Company will make reasonable efforts so that the Award complies with all applicable federal and state securities laws; provided, however, notwithstanding any other provision of the Award Document, the Options shall not be exercisable if the exercise thereof would result in a violation of any such law.

l.  Nothing in this Award Document will be construed as requiring a forfeiture or otherwise prohibiting you from fully and truthfully cooperating with any investigation or engaging in any other conduct protected by U.S. law.

m.  You have read this Award Document and the Plan carefully and understand their terms, including but not limited to the Restrictive Covenants herein.  By indicating your acceptance of these terms, you are expressly accepting the terms and conditions of the Award, and the Company may rely on your acceptance.

**Acceptance of Offer**

To accept this offer you will need to follow the link at the bottom of this page. Your electronic acceptance confirms the following:

I confirm that I have been given a copy of this Award Document and access to the Plan, and that having read both documents I irrevocably agree to:

a. Accept the Options (and any Shares resulting from the exercise of the Options) that are issued by the Company to me in accordance with the terms of the Plan and this Award Document; and

b. Be bound by and abide by the terms of this Award Document and the Plan.

If you do not accept this Award by March 13, 2019, this offer will lapse and be incapable of acceptance (unless otherwise agreed to by the Company).

If you have any questions concerning this offer or the Plan, please contact GMCompensationandBenefits@gm.com.

Yours sincerely,

*Janice K. Uhlig*

_____

Janice K. Uhlig
Vice President, Global Compensation and Benefits

# EXHIBIT 2

# EXHIBIT 2

# GENERAL MOTORS

Amie Nolan-Needham
Assistant General Counsel
Labor Relations & Employment
amie.nolan-needham@gm.com

<u>VIA E-MAIL</u> - David.Lawrence@couzens.com

November 26, 2019

David Lawrence
Couzens Lansky
Country Club Office Centre
39395 W. 12 Mile Road, Suite 200
Farmington Hills, MI 48331

<u>SUBJECT</u>: Brian Latouf's Obligations to General Motors

Dear Mr. Lawrence:

I am sending you this letter because it is my understanding that you represent Brian Latouf concerning his recent decision to resign from General Motors ("GM") to pursue a new position with our competitor, Hyundai North America ("Hyundai"). Please contact me immediately if I am mistaken.

Mr. Latouf's new position with Hyundai directly violates his continuing obligations to GM. Those continuing obligations are explained in more detail below.

## BRIAN LATOUF'S NEW POSITION WITH HYUNDAI

We understand from a November 25, 2019 Press Release by Hyundai that Mr. Latouf has accepted a position as its Chief Safety Officer and will begin working for Hyundai on December 2, 2019. That Press Release makes clear that in his new position Mr. Latouf will be responsible for all of Hyundai's safety regulation matters, strategic legal direction and oversight of its safety and emission investigations and recalls in the U.S., Canada and Mexico.

## DIRECT COMPETITION WITH GM

Mr. Latouf's new position with Hyundai is in direct competition and conflict with his former position as GM's Executive Director of Safety Field Investigations, Regulations & Certification. In that role Mr. Latouf had broad access to GM's confidential information and trade secrets. While employed by GM, Mr. Latouf also repeatedly recognized the need to protect our confidential information and trade secrets, and acknowledged that his responsibility to protect such information does not end when he leaves the Company.

To successfully perform his new role, it is inevitable that Mr. Latouf will bring GM's highly confidential and sensitive information to bear for Hyundai as there is no conceivable way he can do his new job without

disclosing and using GM's confidential information and trade secrets. The disclosure of this information will cause irreparable harm to GM, and violates the promises Mr. Latouf made to protect it.

Mr. Latouf's new position with Hyundai also directly violates the restrictive covenants to which he agreed prior to his separation from GM. Those restrictive covenants were included in the Award Documents he electronically signed each year as a condition of being granted his awards of equity compensation under the General Motors Company Long-Term Incentive Plan. By signing each of those Award Documents, Mr. Latouf agreed to the following restrictive covenants for 12 months following his separation from GM:

- You will not directly or indirectly engage in or perform any engineering, purchasing, design, marketing, manufacturing or other tasks or functions or provide services in any other capacity (e.g., as an employee, a board member, a manager or a consultant) for any motor vehicle manufacturer (including its parent, subsidiaries, and other affiliates) that competes with the Company or its Subsidiaries;

- You will not directly or indirectly, knowingly induce any employee of the Company or any Subsidiary to leave their employment for participation, directly or indirectly, with any existing or future employer or business venture associated with you; and

- You will not directly or indirectly solicit any client, customer, or supplier of, or provider to the Company or its Subsidiaries who was a client, customer, supplier or provider for which you provided services or supervised services during the 12-month period immediately prior to your Termination of Service.

These restrictive covenants are the same ones GM shared with you and Mr. Latouf on November 22, 2019.

## DEMAND

We demand Mr. Latouf's full compliance with his post-employment obligations to GM, including under: (a) the various restrictive covenant agreements between Mr. Latouf and GM requiring that he not work in competition with GM for twelve (12) months after his separation; and (b) applicable law, including the federal Defend Trade Secrets Act of 2016, the Delaware Uniform Trade Secrets Act, and the Michigan Uniform Trade Secrets Act -- these laws entitle us to damages, punitive damages and recovery of our reasonable attorneys' fees and costs.

GM hopes your and Mr. Latouf's immediate and transparent cooperation will avoid escalating this into litigation. Please understand, however, that GM specifically reserves all of its rights under the law, as well as its right to institute an action seeking all possible remedies, including but not limited to injunctive relief, monetary damages, the cancellation of Mr. Latouf's outstanding GM compensation (including his incentive compensation under the Short Term Incentive Plan and Long Term Incentive Plan) and/or recovery of compensation paid to Mr. Latouf by GM, and attorneys' fees and/or costs. GM will also assert all necessary claims against Hyundai, including tortious interference with contract, misappropriation of trade secrets, and conspiracy.

GM also requests that you inform Hyundai about these continuing obligations and expects they will respect them and refrain from inducing you to breach them or benefiting in any way from your breach.

## NOTICE TO PRESERVE

Because Mr. Latouf is now on notice of potential litigation we are providing notice of his obligation to preserve evidence relevant to GM's well-founded concerns. This means Mr. Latouf must preserve and not destroy all hard-copy information and electronically-stored information relating to this matter, including:

- His employment with GM;

- His employment with Hyundai, including any email communications, agreements, offers, job responsibilities, etc.;

- Any GM information, including its intellectual property, Confidential Information, and/or trade secrets that Mr. Latouf has, or have had, in your possession, custody and control; and

- All information relating to any use and/or disclosure of GM's intellectual property, Confidential Information, and/or trade secrets.

This request to preserve all electronically-stored information includes preservation of emails, text messages, cloud storage, hidden system files or metadata presently located on or contained in a free-standing computer or laptop, CPU, or digital device that may contain data-storage capabilities, including but not limited to hard disk drives, optical disk drives, removable media, such as floppy disk drives, CD-ROM and DVD drives, Zip drives or any other similar electronic storage media or system of whatever name or description.

The obligation to preserve the information, including electronically-stored information, described in this letter further includes preservation of (a) electronically-stored information that may have been deleted from active files and that may not be readily recoverable from a backup medium, such as metadata, and (b) any information that comes into existence after the date of this letter or that may exist now or in the future but of which you may have no current knowledge.

\*       \*       \*

**To avoid litigation, please contact me prior to Mr. Latouf beginning his new position with Hyundai on December 2, 2019 to either confirm his resignation from Hyundai or to discuss why you believe his new position does not violate his continuing obligations to GM. We look forward to your immediate cooperation.**

*Nothing in this letter should be construed as a waiver of, or otherwise prejudice, any of GM's legal rights.*

Sincerely,

*Amie E. Nolan - Needham*

Amie Nolan-Needham

# EXHIBIT 3

# EXHIBIT 3

# GENERAL MOTORS

RECEIVED

DEC 2 2019

LEGAL DEPARTMENT
10:30 am

Amie Nolan-Needham
Assistant General Counsel
Labor Relations & Employment
amie.nolan-needham@gm.com

**VIA FEDERAL EXPRESS**

November 26, 2019

Jerry Flannery
Executive Vice President, Chief Legal Officer
Hyundai Motor America
10550 Talbert Ave
Fountain Valley, CA 92708

**SUBJECT**: Brian Latouf's Obligations to General Motors

Dear Mr. Flannery:

It has come to our attention that Hyundai North America ("Hyundai") has hired Brian Latouf as its Chief Safety Officer and that he is scheduled to begin working for the company on December 2, 2019. This letter serves to inform you that Mr. Latouf's employment with Hyundai will violate the restrictive covenants to which he agreed while employed by General Motors ("GM") as our Executive Director of Safety Field Investigations, Regulations & Certification. Mr. Latouf's new position with Hyundai will also disclose GM's confidential information and trade secrets, which he acknowledged were his responsibility to protect even after the end of his employment with GM.

The agreements signed by Mr. Latouf and his obligations to GM remain in effect and prohibit him from working for Hyundai as its Chief Safety Officer. GM is fully prepared to defend its rights if Mr. Latouf decides to begin working for Hyundai. GM sent separate correspondence to Mr. Latouf and his counsel regarding these issues. However, we also wanted to provide this notice directly to Hyundai, because we expect Hyundai to respect Mr. Latouf's continuing obligations and to refrain from inducing Mr. Latouf to breach them. GM is prepared to pursue legal action against Mr. Latouf and Hyundai to enforce these obligations and will seek all available remedies for any harm caused.

Nothing contained in or omitted from this letter is or shall be deemed to be a limitation, restriction, or waiver of any of GM's rights or remedies, all of which are expressly reserved. Please contact me if you have any questions about this letter or the issues referenced herein.

Sincerely,

*Amie E. Nolan-Needham*

Amie Nolan-Needham